UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>NICHOLAS L. KENNEDY,<br><br>    Defendant. | Criminal Action No. 21-487 (CKK) |

**MEMORANDUM OPINION & ORDER**
(January 31, 2025)

**I.**

**A. Procedural History**

A grand jury indicted Defendant Nicholas Kennedy on seven felony and misdemeanor charges for his conduct during the riot at the United States Capitol on January 6, 2021:

- Count One: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Two: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

- Count Three: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

- Count Four: Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2);

- Count Five: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

- Count Six: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G); and

- Count Seven: Tampering with Records, Documents, or Other Objects, in violation of 18 U.S.C. § 1512(c)(1).

*See* Second Superseding Indictment, ECF No. 63.  The Court accepted Kennedy's guilty plea to Counts One and Seven.  Min. Entry (Apr. 3, 2024).  Following a stipulated bench trial, the Court

found Kennedy guilty of Count Two. *Id.* And the Government agreed to dismiss Counts Three through Six at sentencing. *See* Min. Order (Mar. 25, 2024).

Before sentencing, the Supreme Court issued its opinion in *Fischer v. United States*, 144 S. Ct. 2176 (2024), narrowing the scope of 18 U.S.C. § 1512(c)(2) and unsettling the law on which this Court relied in convicting Kennedy of Count Two. The parties then jointly moved to vacate the scheduled sentencing hearing. Joint Mot. to Continue, ECF No. 81. "Because the elements for Count Two" applied at the stipulated trial "did not require the Court to find that the defendant impair[ed] the availability or integrity for use in an official proceeding of records, documents, objects or other things used in the proceeding," the parties also jointly moved to vacate Kennedy's conviction on Count Two. *Id.* at 2. The parties further requested that the Court retry Kennedy on Count Two and hear "arguments regarding the application of the standard under *Fischer* to the existing factual record" stipulated to at the original bench trial. *Id.*

The Court granted the parties' joint motion, vacated Kennedy's conviction under Count Two, and held a second stipulated bench trial on October 23, 2024. Min. Order (Aug. 8, 2024); Min. Order (Oct. 22, 2024); Min. Order (Oct. 24, 2024). That trial was based on the same [87-1] Joint Statement of Facts for Stipulated Trial (the "Stipulated Facts" or "Stip. Facts") and accompanying exhibits the Court had reviewed at the first stipulated trial. But the Court adopted a revised statement of the elements of Count Two. *See* Proposed Jury Instructions, ECF No. 82.

During the stipulated retrial, the Court engaged in a colloquy with Kennedy. *See* Stipulated Trial Tr. (Oct. 23, 2024), ECF No. 86 9:2–19:22 ("Oct. 23 Tr."). Based on that colloquy, the Court found that Kennedy knowingly, voluntarily, and intelligently waived his rights to a jury trial on Count Two, to confront witnesses against him, to compulsory process, and to testify in his defense. *See id.* The Court then reviewed the Stipulated Facts paragraph-by-paragraph with Kennedy. *See*

*id.* 20:8–74:14.  Kennedy agreed with, or did not contest, each provision of the Stipulated Facts describing his conduct.  *See id.*

The Court heard oral presentations from the parties on whether the Stipulated Facts supported a finding of guilt.  Oct. 23 Tr. 85:11–107:25.  And the parties filed written submissions in support of their positions.  *See* Government's Post-Trial Brief Regarding Count Two, ECF No. 87 ("Gov't's Br."); Defendant's Response to Gov't's Br., ECF No. 91 ("Def.'s Resp.").  The Court was prepared to issue its findings of fact and conclusions of law and to render a verdict on Count Two.  Below, the Court summarizes its factual findings.

**B. Kennedy's Conduct**

Beginning in 2020, and until his arrest in July 2021, Kennedy was a member of the Proud Boys—which describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists."  Stip. Facts ¶¶ 16–17.  Proud Boys members frequently attend rallies and protests and sometimes engage in violence.  *Id.* ¶ 17.  When Proud Boys members attend these events, they often wear black and yellow regalia.  *Id.*  Although the Proud Boys have semi-autonomous local chapters, Enrique Tarrio was the national chairman of the Proud Boys on January 6, 2021.  *Id.* ¶ 18.

Between November 3, 2020 and January 6, 2021, Kennedy sent, received, or created dozens of images on his phone suggesting that there had been large-scale voter fraud during the 2020 presidential election and that President Donald Trump had won that election.  *See* Stip. Facts ¶¶ 19–25.[1]  In a successful effort to obstruct the grand jury investigation into his actions, Kennedy later performed a factory reset of his phone, which destroyed most of the data memorializing his

---

[1] *See* Gov't's Exs. 73-2, 73-12, 73-13, 73-98, 73-104, 73-113, 73-118, 73-119, 73-120, 73-128, 73-131, 73-147, 73-149, 73-160, 73-190, 73-194, 73-197, 73-198, 73-213, 73-221, 73-238, 73-242, 73, 248, 73-250, 73-256, 73-259 73-261, 73-266, 73-273, 73-278.

digital activity. Stip. Facts ¶¶ 75–81.[2] As a result, only the images Kennedy sent, received, or created were preserved. *Id.* ¶ 81. The Government was unable to recover any videos or any of the messages accompanying the images from Kennedy's phone. *Id.*

Disturbingly, many of the images recovered from Kennedy's phone use overheated rhetoric suggesting or joking that allegations of fraud warranted violent reprisals. One image declares that "the only way to eliminate fraud is to eliminate fraudsters" and calls for "refighting the Revolutionary War." Gov't's Ex. 73-14. Others accuse perceived political enemies of "treason" and being "traitors." Stip. Facts ¶ 24; Gov't's Ex. 73-158. One image depicts a mock "Civil War 2021 Map" showing the country divided into regions like the "Confederate States of America" and "Middle Trumpistan." Gov't's Ex. 73-285. And another makes light of "the peaceful transition of power." Gov't's Ex. 73-6.

The images recovered from Kennedy's phone also show the timeline of his planning to travel to Washington, D.C. for the Joint Session of Congress on January 6, 2021. On December 19, 2020, President Trump announced that there would be a "Big protest in D.C. on January 6th." Stip. Facts ¶ 29. Thereafter, Kennedy began sharing images promoting that planned protest. *E.g.*, Gov't's Exs. 73-92, 73-219, 73-232. On December 26, Kennedy shared a message from Proud Boys Chairman Enrique Tarrio advising Proud Boys members not to wear "colors"—meaning black and yellow regalia—while in Washington, D.C. Gov't's Ex. 73-218. On January 4, 2021, Kennedy shared an image with text stating: "Washington, D.C. January 6th, 2021 . . . I don't know which one we'll need – Pitchforks or party hats . . . But either way, it's gonna be one hell of a party!" Gov't's Ex. 73-132. On January 5, 2021, Kennedy and a small group of others drove from Missouri to Washington. Stip. Facts ¶ 38.

---

[2] For this conduct, Kennedy pleaded guilty to Count 7 of the Second Superseding Indictment, Tampering with Records, Documents, or Other Objects, in violation of 18 U.S.C. § 1512(c)(1). *See* Min. Entry (Apr. 3, 2024).

4

On the morning of January 6, 2021, Kennedy assembled with a group of Proud Boys at a hotel in Washington, D.C. Stip. Facts ¶ 39. As instructed by Tarrio, none of the men wore black and yellow Proud Boys colors. *Id.* ¶ 40. Kennedy wore tan pants, a black jacket, and a black baseball cap emblazoned with the letters "RWDS." *Id.* "RWDS" stood for "Right Wing Death Squad." *Id.* When Kennedy's group joined a larger group of Proud Boys at the Washington Monument, a Proud Boys member distributed pieces of orange tape—which Kennedy placed on his hat—so members could identify each other in the crowd. *Id.*

Around 10:30 AM, leaders of this combined group organized the Proud Boys into a column and marched away from the Washington Monument—and the nearby rally—and toward the Capitol. Stip. Facts ¶ 41. When the group reached the east side of the Capitol, one member shouted "let's take the fucking Capitol." *Id.* ¶ 43. Around noon, the group marched back to the west side of the Capitol complex. Stip. Facts ¶ 44. At 12:45, the group reformed into a column and marched on the Capitol. *Id.* Kennedy's group arrived at Peace Circle, which had been uncrowded and relatively peaceful, at around 12:50. *Id.* ¶ 45. Proud Boys began leading the growing crowd in call-and-response chants in which Kennedy joined. *Id.* ¶ 46.

Minutes later, Kennedy was among the first wave of rioters to surge through a police barricade and overrun the officers stationed at the edge of Capitol grounds. *Id.* ¶ 47; Gov't's Ex. 512. For the next hour, Kennedy remained at the front of the crowd on the Capitol's exterior West Plaza. *See* Stip. Facts ¶¶ 48–50. During that time, he stood with other Proud Boys and participated in chants while officers attempted to disperse the crowd. *Id.* Kennedy jabbed his fist into the air when one Proud Boy encouraged the crowd to "take" the Capitol. Gov't's Ex. 504A. Slowly, Kennedy and the crowd progressed closer to the Capitol building. Stip. Facts ¶ 51.

At around 1:45 PM, rioters overwhelmed a small group of officers defending a set of stairs

5

leading to the Capitol's Upper West Terrace. Stip. Facts ¶ 52. Kennedy followed the crowd up the stairs carrying a 2x4 wooden plank. Gov't's Ex. 515B. He was among the first wave of rioters to reach the Upper West Terrace, which had doors leading into the Capitol building. Stip. Facts ¶¶ 52–54. By 2:13 PM, the Senate Wing Door of the Upper West Terrace was forced open and its adjacent windows had been shattered. Id. ¶ 55. Kennedy entered the Capitol through the Senate Wing Door less than 30 seconds later. Gov't's Ex. 300 at 3:00. He immediately pulled a black gaiter over his face and pumped his fist in the air. Id.

Kennedy then walked to the east side of the building where he watched officers struggle to secure the Senate Carriage Doors, which had been breached by rioters. Stip. Facts ¶ 57. After securing the door, the officers commanded Kennedy to remain in place. Id. ¶ 58. At around 2:20 PM, Kennedy approached the officers and attempted to push through them. Gov't's Ex. 500 at 49:28. Kennedy exchanged shoves with multiple officers before briefly standing aside. Id. at 49:38–49:48. But when other members of the mob broke through the line, Kennedy followed them back to the west side of the Capitol. Stip. Facts ¶ 61.

Just before 2:30 PM, Kennedy joined a crowd gathering outside the House Chamber. See Stip. Facts ¶¶ 62–64. He was among the first to do so. Id. ¶ 64. As that crowd gathered, the proceedings in the House were put into recess. See id. ¶ 55. For about ten minutes, the crowd chanted slogans like "Stop the steal" and "We want Trump" at a small group of officers who had formed a line outside the door to the House Chamber. Id. ¶ 64; Gov't's Ex. 500 at 55:50–1:03:03.

Kennedy stood near the front of the crowd as rioters around him yelled "Drag 'em out" and "tell Pelosi we're coming for that bitch, fucking traitorous cunt!" Gov't's Ex. 524; Gov't's Ex. 500 at 56:04–56:14. He also turned to the crowd behind him and "made a series of tactical hand signals" that appear to have been directed to other Proud Boys. Stip. Facts ¶ 64. At around 2:36,

6

the crowd surged forward, overwhelmed the line of officers, and pinned the officers against the doors to the House Chamber. *Id.* ¶ 65. Kennedy moved to within feet of the doors and again turned back to the crowd to make a series of hand signals. Gov't's Ex. 500 at 1:04:05. He nodded along as the crowd continued chanting and watched as members of the crowd used a flagpole and cane to beat against and break the door to the House Chamber. *Id.* at 1:05:49–1:08:42.

From his vantage point, Kennedy could see that the door had been barricaded with furniture and that officers on the other side had their weapons drawn. *See* Stip. Facts ¶¶ 68–69; Gov't's Exs. 350, 503B. One Member of Congress spoke through the broken glass feet away from Kennedy and attempted to convince the mob to disperse. Stip. Facts ¶ 68. Kennedy knew that his presence was interfering with Congress's ability to continue the Joint Session, but he chose to remain at the door anyway. *Id.* ¶ 69. As he stood there, Members of Congress were still being evacuated from the House Chamber. *See id.*

Kennedy finally left the vestibule to the House Chamber at around 2:43 PM. Gov't's Ex. 308 at 8:18. He later explained that when an officer at the door to the House Chamber told him that "everybody's out of the chamber," he concluded that there was "no sense [in] being in here" because "[w]e can't protest." Gov'ts Ex. 41 29:24–30:2. Kennedy ultimately exited the Capitol at around 3:02 PM. Gov't's Ex. 314 at 0:55.

By his own admission, Kennedy engaged in this conduct "to try to stop Congress from certifying the Electoral College vote that day and to confer a benefit on his preferred candidate for president, Donald Trump." Stip. Facts ¶ 73. Put more bluntly by Kennedy's counsel, Kennedy "wanted to raise some hell and stop the counting of the [E]electoral [C]ollege." Def.'s Resp. at 4.

## II.

On January 21, 2025, the Government moved to dismiss the Second Superseding Indictment "with prejudice" and in its entirety under Federal Rule of Criminal Procedure 48(a). Gov't's Mot. to Dismiss, ECF No. 92. Under Rule 48(a), "the government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).

As the "reason for this dismissal," the Government cited a presidential Proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." Gov't's Mot. That Proclamation, in relevant part, "direct[s] the Attorney General to pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025). The Government offered no other basis for its motion.

Because of the unique procedural posture of this case, the Court addresses the Government's motion with respect to four groups of charges against Kennedy.

### 1. *Count One*

The Court accepted Kennedy's guilty plea to Count One of the Second Superseding Indictment—charging Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Min. Entry (Apr. 3, 2024). Kennedy is awaiting sentencing on that charge. And Rule 48(a) does not explicitly grant either the Government or the trial court the authority to vacate or set aside a plea of guilty, a jury verdict, or a court's findings of fact and conclusions of law following a bench trial. *See* Fed R. Crim. P. 48(a); *see also United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (noting that "both the text of [Rule 48] and its roots in the common law doctrine of *nolle prosequi* cast doubt on Rule 48's applicability post-conviction" without deciding whether Rule 48 "can properly be

used to vacate a final conviction"); *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010) (questioning whether Rule 48 allows dismissal following "conviction and unsuccessful direct appeal" without resolving whether dismissal under Rule 48 was proper under those circumstances).

But the U.S. Court of Appeals for the D.C. Circuit has indicated in dicta that the Government may seek dismissal of criminal charges under Rule 48(a) at least until a judgment becomes final on direct appeal. *See United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020) (citing *Rinaldi v. United States*, 434 U.S. 22 (1977)); *see also Smith*, 467 F.3d at 788–89 (concluding that trial courts have jurisdiction to entertain Rule 48 motions "after sentencing and appeal"); *cf. Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended."). It follows that the Government may also seek dismissal under Rule 48(a) before the trial court has sentenced the defendant.

Consistent with that conclusion, at least two courts in this District have granted Rule 48(a) motions filed after trial but before sentencing. *See United States v. Venkata*, 709 F. Supp. 3d 9, 19 (D.D.C. 2024) (RDM); *United States v. Purdy*, No. 22-cr-19-1, 2025 WL 219111, at *2 (D.D.C. Jan. 14, 2025) (RCL). And this Court has applied Rule 48(a) in similar postures. *See United States v. Box*, No. 22-cr-413, 2025 WL 289463, at *3 (D.D.C. Jan. 22, 2025) (CKK) (after guilty verdict at bench trial but before sentencing); Mem. Op. & Order (ECF No. 28), *United States v. Allen*, No. 24-cr-384 (D.D.C. Jan. 22, 2025) (CKK) (after guilty plea but before sentencing).

In short, this Court agrees that Rule 48(a) is a proper vehicle for dismissal of a criminal case "with leave of the court" after a guilty plea but before sentencing.

The Court must therefore consider whether to grant its leave to dismiss this case. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that the "requirement of

9

judicial leave" in Rule 48 "gives the court a role in dismissals following indictment," even when "the defendant concurs in this dismissal"); *United States v. Flynn*, 507 F. Supp. 3d 116, 126–31 (D.D.C. 2020) (EGS) (analyzing the scope of a trial court's discretion under Rule 48(a)); *see also Rinaldi*, 434 U.S. at 30 n.15 (noting that Rule 48 "obviously vest[s] some discretion in the court" without deciding whether that discretion extends to cases in which the defendant consents to dismissal). To inform this analysis, the Court may "require a statement of reasons and underlying factual basis" for the Government's motion to dismiss. *See Ammidown*, 497 F.2d at 620.

Here, the Government's only stated reason for pursuing dismissal with prejudice is that the President has ordered the Attorney General to do so. *See* Gov't's Mot. (citing Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025)). The Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *See United States v. Nixon*, 418 U.S. 683, 693 (1974). Accordingly, the Court will **GRANT** the Government's motion and **DISMISS** Count One of the Second Superseding Indictment with prejudice.

2. *Count Two*

Count Two charges Kennedy with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. Second Superseding Indictment, ECF No. 63 at 2. The Court held a stipulated bench trial on this charge and was preparing to render a verdict when the Government moved to dismiss. In other words, the bench trial on Count Two "has not concluded." Min. Order (Jan. 22, 2025).

Rule 48(a) provides that the Government "may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a). Accordingly, the Court ordered Kennedy to respond to the Government's motion to dismiss "indicating whether he consents to dismissal of the prosecution." Min. Order (Jan. 22, 2025). Kennedy has reported that he consents to such dismissal. Def.'s Resp. to Order, ECF No. 93.

Again, the Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *Nixon*, 418 U.S. at 693. The Court will **GRANT** the Government's motion and **DISMISS** Count One of the Second Superseding Indictment with prejudice.

### 3. *Counts Three, Four, Five, and Six*

Counts Three through Six charge Kennedy with misdemeanor offenses for his actions at the Capitol on January 6, 2021. *See* Second Superseding Indictment, ECF No. 63 at 2–3. Under the plea agreement between the parties, the Government was to dismiss these counts at sentencing. *See* Min. Order (Mar. 25, 2024).

Again, the Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *Nixon*, 418 U.S. at 693. The Court will **GRANT** the Government's motion and **DISMISS** Counts Three, Four, Five, and Six of the Second Superseding Indictment with prejudice.

### 4. *Count Seven*

Count Seven charges Kennedy with Tampering with Records, Documents, or Other Objects, in violation of 18 U.S.C. § 1512(c)(1). Second Superseding Indictment, ECF No. 63 at 3–4. In April 2024, Kennedy pleaded guilty to Count Seven, and the Court accepted his guilty plea. Min. Entry (Apr. 3, 2024). As it had with Counts One through Six, the Government moved to dismiss Count Seven on the basis of the President's directive to "pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Proclamation No. 10887.

But unlike Counts One through Six, Count Seven charges Kennedy for conduct that occurred *after* January 6, 2021. The statement of offense underlying Kennedy's guilty plea to Count Seven describes Kennedy's efforts between January 7, 2021 and July 28, 2021 to obstruct a grand jury investigation into his conduct on January 6, 2021. *See* Stip. Facts ¶¶ 74–81. Specifically, when Kennedy began to suspect the "FBI [was] closing in on" him, he began "[e]ras[ing] [his] phone all the time" to "wipe" it "of any incriminating evidence." *Id.* ¶¶ 76–78.

Exercising its discretion under Rule 48(a) to "require a statement of reasons" for dismissal, *Ammidown*, 497 F.2d at 620, the Court ordered the Government to clarify "whether it regards Kennedy's admitted attempt to obstruct a grand jury investigation as 'conduct related to events at or near the United States Capitol on January 6, 2021' or whether it has some other basis for seeking dismissal of Count Seven," Min. Order (Jan. 22, 2025) (quoting Proclamation No. 10887).

A week later, the Government submitted its response: "The government, through undersigned counsel, states that it regards Kennedy's attempt to obstruct a grand jury investigation as conduct related to the events at or near the United States Capitol on January 6, 2021." Gov't's Resp., ECF No. 93 (internal quotation marks omitted). The Government does not explain why it

has taken this position. Nor does it offer any insight into how it will construe the term "related to" in other cases implicating Proclamation No. 10887.[3]

This paucity of explanation from the Government is concerning. As is the message the Government's motion might send to future defendants facing a grand jury investigation. But at least in this Circuit, Rule 48(a) gives the Court "no power" to second-guess "the prosecution's exercise of charging authority." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (Srinivasan, J.). Rather, as this Court has recognized repeatedly, the authority to decide whether to pursue charges "remains with the Executive." *Id.* And the "principal object" of Rule 48(a)'s leave-of-court requirement is "to protect a defendant against prosecutorial harassment." *Rinaldi*, 434 U.S. at 29 n.15.

Here, the Court discerns no defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal of Count Seven. But neither does the Court suspect that the Government's motion "is part of a scheme of prosecutorial harassment." *Fokker*, 818 F.3d at 742. Recognizing the unique posture of this case and the Government's exclusive authority to exercise prosecutorial discretion, the Court will **GRANT** the Government's motion and **DISMISS** Count Seven of the Second Superseding Indictment with prejudice. This decision will have no bearing on the Court's future interpretation of 18 U.S.C. § 1512(c)(1).

---

[3] Consider, for example, the case of Edward Kelley. Following a bench trial, this Court found Kelley guilty of eleven felony and misdemeanor offenses for his conduct at the Capitol on January 6, 2021. *See* Min. Entry (Nov. 8, 2024), *United States v. Kelley*, No. 22-cr-408. On the Government's motion, those charges have now been dismissed. *See* Mem. Op. & Order (ECF No. 88), *United States v. Kelley* (D.D.C. Jan. 22, 2025). Kelley was also indicted for conduct during the Government's investigation into his actions on January 6. *See* Indictment (ECF No. 17), *United States v. Kelley*, No. 22-cr-118 (E.D. Tenn. Dec. 21, 2022). A jury in the Eastern District of Tennessee found Kelley guilty of Conspiracy to Murder Employees of the United States (the FBI agents investigating him), Solicitation to Commit a Crime of Violence, and Influencing a Federal Official by Threat. *See* Jury Verdict (ECF No. 85), *United States v. Kelley* (E.D. Tenn. Nov. 20, 2024). Like the Government here, Kelley has moved to dismiss those charges under Proclamation No. 10887. *See* Def.'s Mot. to Dismiss (ECF No. 93), *United States v. Kelley*, (E.D. Tenn. Jan. 27, 2025). But unlike the Government, Kelley has articulated a theory of the meaning of "related to" in Proclamation No. 10887. *See* Def.'s Mem. (ECF No. 94), *United States v. Kelley* (E.D. Tenn. Jan. 27, 2025) ("But for the Washington D.C. indictment, this case would have never been investigated, charged and prosecuted. The cases are clearly related to one another."). At the time of writing, Kelley's motion remains unanswered.

### III.

Dismissal of charges, pardons after convictions, and commutations of sentences will not change the truth of what happened on January 6, 2021. What occurred that day is preserved for the future through thousands of contemporaneous videos, transcripts of trials, jury verdicts, and judicial opinions analyzing and recounting the evidence through a neutral lens. Those records are immutable and represent the truth, no matter how the events of January 6 are described by those charged or their allies.

What role law enforcement played that day and the heroism of each officer who responded also cannot be altered or ignored. Present that day were police officers from the U.S. Capitol Police and those who came to their aid when called: the D.C. Metropolitan Police Department, Montgomery County Police Department, Prince George's County Police Department, Arlington County Police Department, and Fairfax County Police Department. Grossly outnumbered, those law enforcement officers acted valiantly to protect the Members of Congress, their staff, the Vice President and his family, the integrity of the Capitol grounds, and the Capitol Building—our symbol of liberty and a symbol of democracy around the world. For hours, those officers were aggressively confronted and violently assaulted. More than 140 officers were injured. Others tragically passed away as a result of the events of that day. But law enforcement did not falter. Standing with bear spray streaming down their faces, those officers carried out their duty to protect.

All of what I have described has been recorded for posterity, ensuring that what transpired on January 6, 2021 can be judged accurately in the future.

* * *

In light of the foregoing, it is hereby **ORDERED** that:

- The Government's [92] Motion to Dismiss is **GRANTED**;

- The [63] Second Superseding Indictment is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a);

- All scheduled proceedings and deadlines in this matter are **VACATED**;

- The [9] Order Setting Conditions of Bond is **VACATED**; and

- Any other pending motions are **DENIED AS MOOT**.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:** January 31, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge